No. 4581.

Court of Appeal, Parish of Orleans.

## MAILHES & SIMONE VS. SOUTHERN PACIFIC COMPANY

Questions of fact only are involved herein.

Appeal from Civil District Court, Division "E."

E. J. Mieral and A. Voorhies, for Plaintiff and Appellee.

Denegre & Blair, V. Leovy, for Defendant and Appellant.

ESTOPINAL, J. Plaintiffs sue to recover of the defendant one thousand and ten dollars ($1,010.00), which they charge is the value of one hundred and one (101) bags of garlic, shipped from New York via one of defendant's ships, averring that although the garlic was shipped from New York in good order and well conditioned, it reached this city "wet, decayed and rotten," entirely useless and worthless, all occasioned by the neglect and fault of defendant, its employes, agents, etc.

Defendant's answer admits the shipment on one of its steamers as evidenced by the bill of lading in the record, but denies that the garlic was mashed or in any condition upon arrival here that could be due to bad hauling or ill-treatment, but avers that the rotten condition of the garlic was the result of the passage of time; defendant avers speedly transportation and tender to plaintiffs of the garlic; that the rottenness of the garlic did not occur after the receipt by it of the garlic in New York, but that it was already in that rotten condition, which condition inevitably increased thereafter, and became apparent before and by the time of the arrival in New Orleans. Upon the refusal of the consignees (plaintiffs) to accept the shipment, defendant sold the garlic, realizing thereby $6.28, and tendered plaintiff the sum of $5.22, the balance left after deducting freight charges, and a further sum of $8.30, the amount of costs at the time of said tender.

Judgment of the District Court was in favor of plaintiffs for $738.40, from which defendant appeals.

Plaintiffs answer the appeal, seeking to have the judgment increased by this court to the sum sued for.

The plaintiffs have pitched their case, particularly the facts touching the condition of the garlic, upon the theory that it

was of the crop of that year, and that consequently, under ordinary conditions, the garlic would keep several months, and that its decay, scarcely two months after it had been harvested, was indicative of improper hauling or storing, in this case, by the carrier.

We think the evidence explodes this theory. We doubt very much that the garlic returned from New York on June 27 was the same lot shipped from New Orleans May 27, for one striking reason shown by the record.

The shipment to New York May 27, consisted of 108 bundles of garlic, weighing nearly 11,000 pounds. Just a month later 101 bundles of garlic alleged to be of the same lot (only seven bundles less), were shipped from New York, and weighed 6,320 pounds. The discrepancy is so striking and significant that there is no need of discussing it.

Unfortunately for the defendant, it gave a clean bill of lading for these goods, and must now account for the cause of damage. It must be assumed that the bill of lading which has not been satisfactorily contradicted, there being witnesses at New York testifying both ways, some saying the garlic was in bad condition, and others saying it was in good condition, was issued by the company after a proper inspection of the shipment.

Under our jurisprudence it devolves upon the defendant to prove the precise cause of the damage or loss.

Lehman Stern & Co. vs. Morgan's Louisiana and Texas Railroad. 115 La., p. 1.

Upon this point we agree with the district judge, who says:

"That burden has not been discharged by defendant. Its attempt to show that the garlic was in process of rotting when shipped, and that 'the rottenness of said garlic could not (from its nature) have been, and was not, created or caused after receipt of the said garlic in New York, but said rottenness would and did naturally increase and become apparent before and by the time of arrival in New Orleans' has not been successful."

The testimony of witnesses for defendant touching the condition of the garlic when delivered for shipment at New York, is not reliable, for it must be presumed that if, as these witnesses state, the garlic was so rotten and generally bad, this fact could not have escaped the attention of the receiving clerk.

and the bill of lading would not have contained the recital that

The defendant company, through the neglect of its employees at their New York wharves, through its own laches, has committed itself through the bill of lading to a state of facts which it has not successfully negatived.

The facts in the case about which we differ with the court *a qua* are those which involve the measure of damages, to which plaintiffs are entitled.

Mr. Simone, one of the plaintiffs, explains in his testimony that the garlic was shipped back from New York to New Orleans, at his instance, giving as a reason that the New York market was very low, while that of New Orleans was very high, there being no garlic on the latter.

This witness repeatedly stated, and did so without equivocation, that garlic was worth 4 or 5 cents a pound in New York, and Mr. Simone, we must unavoidably presume, was posted about the New York market, necessarily so, in order to properly direct the disposition of his property and safeguard his interest.

Simone testifies that ten strings of garlic go to a bundle, and that at 4 or 5 cents a pound they would have brought in New York about five or six dollars per bundle.

We gather from this statement of the witness, who is a member of the plaintiff firm, that a string of garlic weighs slightly more than ten pounds, and was therefore selling on the New York market at about 50 cents per string.

As we have noted, Mailhes testifies that he could have sold the garlic in New Orleans at from $1.50 to $1.75 per string.

The district judge in considering the damage states that two witnesses testified on the subject of the value of the garlic at the port of shipment, the damages being limited to such value by the bill of lading, but, one of the witnesses, says the Court, was Simone, one of the plaintiffs, who "fixed the value of garlic at New York at the date of shipment, June 27, 1906, at 5 or 6 cents per pound, but he should not be bound by the testimony because he had no personal knowledge of the market's condition."

We think, however, that his testimony, on the contrary, should be given much weight.

The other witness, Fred Stricker, a member of the firm of J. Hamburger Company, by whom the garlic was shipped

back, testified that the prices each day ranged 12 to 15 cents a pound.

The lower court in adopting Stricker's figure, construed the witness' meaning to be that garlic was worth at the time of shipment from 12 to 15 cents per pound.

Our appreciation of this testimony differs from that of the judge a qua. In the light of the facts presented we are satisfied that Simone's figures were correct.

If Stricker meant that garlic was worth from 12 to 15 cents per pound in New York at the time of shipment, then there was but slight difference in the two markets. Twelve or fifteen cents per pound in New York means from one dollar and twenty cents ($1.20) to one dollar and fifty cents ($1.50) per string of garlic, according to plaintiff's own figures as to its weight.

We cannot believe that plaintiffs would undertake the shipment of produce from one market to another distant one, the operation involving considerable charges, unless there was a material difference in said markets. We have devoted this brief discussion to this phase of the case in order to show that Mailhes was probably well posted about the market when he said garlic was worth 4 or 5 cents per pound, and that Stricker, when he spoke of the market *ranging* 12 to 15 cents meant a fluctuation between a low price and the figure named.

In computing the damages to which plaintiffs appear to be entitled, we take plaintiff's highest estimate of the price of the garlic in New York, about the end of June, 1906, to-wit: Five cents per pound on 6,320 pounds, making an aggregate of three hundred and sixteen dollars $316.00).

It is therefore ordered, adjudged and decreed, that the judgment appealed from be, and it is hereby amended by reducing it from seven hundred and thirty-eight dollars and forty cents ($738.40), to three hundred and sixteen dollars $316.00), and as thus amended, it is affirmed.